IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

YUSEF WILLIAMS,

|  |  |  |
|---|---|---|
| | Plaintiff, | OPINION AND ORDER |
| v. | | 20-cv-24-wmc |

DR. THORPE,
KAREN ANDERSON, and
TERESA ANDERSON,

Defendants.

Although not filing suit until 2020, *pro se* plaintiff Yusef Williams contends that the above-named health care professionals at Columbia Correctional Institution violated his constitutional and state law rights back in 2013 by delaying his referral to a hospital for treatment of an abscessed tooth. Those defendants -- Dr. Thorpe, Karen Anderson and Teresa Anderson -- now seek summary judgment on the ground that no reasonable fact finder could conclude that they consciously disregarded Williams' tooth condition and because his state-law claim is time-barred. (Dkt. #31.) Because defendants are correct on both points, the court will grant defendants' motion, direct entry of judgment in defendants' favor and close this case.

UNDISPUTED FACTS[1]

A. Parties

Plaintiff Yusef Williams was incarcerated at Columbia in 2013. Defendant James

---

[1] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying record evidence as appropriate.

Thorpe was employed by the Wisconsin Department of Corrections ("DOC") as a dentist from September 1983 until January 2016.  He was responsible for general dentistry at Columbia, under the supervision of the DOC's Dentist Supervisor and Dental Director.

Defendant Trisha Anderson is a registered nurse, and she worked for the DOC as a nurse clinician at Columbia from 2011 through 2018.  T. Anderson's duties included patient evaluation, assessment and treatment; assisting advanced care providers; managing medication; providing emergency care; and maintaining medical records.

Finally, during the relevant period, defendant Karen Anderson worked for the DOC as a Health Service Unit ("HSU") Manager ("HSM") at Columbia.  She is a registered nurse.  As an HSM, K. Anderson's responsibilities were largely administrative:  she managed health care services, monitored care plans; provided liaison assistance between disciplines, institution units and community health care providers; and monitored nursing documentation.  The HSM does not generally evaluate, diagnose or determine treatments for inmates, nor can the HSM control the schedules of DOC advanced care providers, like Dr. Thorpe.  In addition, neither the HSM nor nurses have the authority to prescribe medication, refer patients to offsite specialists, or override the treatment decisions of dentists.

### B. Dental Care Requests

To request non-emergency dental care, inmates must submit a Health Service Request ("HSR") or Dental Services Request ("DSR") to the HSU.  Inmates are instructed that if they have a medical or dental emergency, they should alert unit staff.  An emergency is defined as a potentially life-threatening medical condition.

HSRs are triaged by nursing staff once daily.  The HSR form includes a section in which an inmate may check a box to indicate that they wish to be seen by HSU staff.  As HSM, K. Anderson typically did not see HSRs unless nursing staff forwarded them to her to address a particular issue.  If inmates wish to be seen right away, they are to request a sick call by submitting form DOC-3035.  Generally, nurses triage those forms and schedule nurses to visit inmates during sick call.  When inmates report symptoms that do not require evaluation from a doctor, or they can wait, nursing staff attempt to work with inmates to rule out simple causes and try to use over-the-counter medications that nursing staff are allowed to distribute without authorization from an advanced care provider.  Following nursing protocol, nursing staff typically may provide pain interventions, such as heat and/or ice therapy, Tylenol and ibuprofen.

DSRs are treated like HSRs.  Inmates identify the type of care they are seeking and describe their issues.  Inmates are instructed to contact unit staff for emergencies, who would reach out to the on-call physician to address dental emergencies.  When Thorpe was employed at Columbia, if no one from the dental clinic is on site, the HSU triages DSRs. If the dental clinic was open, a dental assistant would collect DSRs and screen them for hygiene requests.  Dr. Thorpe triaged the remaining DSRs based on patient history and

3

dental records, the length of the waitlist, and the inmates requiring dental treatment. Dr. Thorpe would also enter when inmates would be seen on the appropriate dental charts. Sometimes, Dr. Thorpe instructed the dental assistant to make entries related to scheduling or record review. Generally, Dr. Thorpe estimated that he would receive between 40 and 100 DSRs every day while at Columbia, the majority of which included reports of pain due to a dental issue. As HSM, K. Anderson did not triage DSRs.

During the relevant time period, dental staff saw Columbia patients two days a week. Dr. Thorpe was able to see eight to 20 inmates per day, depending on the procedure. Therefore, there was a long wait list, and Dr. Thorpe had to use his medical judgment in scheduling inmates for dental treatment. Five types of waiting lists were created to organize the triaging system: (1) a routine wait list; (2) teeth cleaning or hygiene wait list; (3) essential wait list; (4) urgent wait list; and (5) urgent or emergency care.

### C. Williams' Dental Care

On August 15, 2013, Dr. Thorpe saw Williams for a dental examination and determined that teeth numbers 17 and 18 needed to be extracted. Dr. Thorpe referred Williams to an off-site dentist for the extraction, and he prescribed Williams 500 mg of amoxicillin. Dr. Thorpe also noted that Williams was already taking gabapentin, naproxen and Vicodin for pain associated with a recent carpal tunnel surgery. Dr. Thorpe further reviewed Williams' post-surgery record and noted that (1) Williams was reporting high pain levels and (2) his blood pressure was high.

Dr. Thorpe explains that once he decided that Williams needed to have the teeth removed, the next step was for the dental assistant to schedule the extraction with Dodge

4

Correctional Institution's oral surgeon, Dr. Brian Kelley. However, Dr. Thorpe was not actually involved in scheduling that extraction; rather, the dental staff at Dodge Correctional were responsible for handling that scheduling based on urgency or priority.

On November 18, 2013, Dr. Grossman prescribed Williams 600 mg ibuprofen as needed for wrist pain for a period of two months. On Sunday, November 24, 2013, Williams next submitted a DSR reporting a headache and severe pain in his left jaw and by his ear. HSU records shows that the next day, Williams asked security staff to be seen for emergent dental pain. Nurse Valerius responded to Williams' request and examined him that day. Williams reported that he had been experiencing lower left jaw pain over the past week, and that the pain worsened overnight. Williams reported that the dentist told him he needed his wisdom teeth removed and that a tooth was rotten. Valerius noted no visible indication of rot, but that the area around that tooth was moderately red and swollen and that there was moderate swelling on the left side of his face. Nurse Valerius further noted that Williams had access to 600 mg ibuprofen as needed, so she issued him an ice pack to help him with pain and instructed him on performing salt-water rinses, applying cold compresses, chewing on the unaffected side of his mouth, and avoiding spicy or acidic foods. She further told him that he would be referred to a dentist as soon as possible. That same day, Dr. Hannula also issued Williams 500 mg amoxicillin to be taken three times a day for ten days. Nurse Valerius then completed a report and referred her notes to dental.

On November 29, Williams was again seen in the HSU for continued jaw and tooth pain. At that point, Williams asked to go to the hospital. The nurse on duty again noted

some swelling on the lower left of his face, as well as the recent amoxicillin prescription. The nurse advised him to continue taking that medication and ibuprofen as directed, and she placed an urgent referral to dental.

On Tuesday, December 3, Dr. Thorpe responded to Williams' November 24 DSR, seeing him that same day. Dr. Thorpe represents that he would not have seen the November 24 DSR earlier because the week before was Thanksgiving. Dr. Thorpe further states that before seeing Williams, he would have reviewed his records, meaning he would have known that a nurse had provided an ice pack and instructed him on rinses, cool compresses, modifying how he ate, and taking medications. Dr. Thorpe also would have seen Dr. Hannula's amoxicillin order. Dr. Thorpe ordered more amoxicillin, hoping that the antibiotic would help with symptoms until Williams could be seen by an oral surgeon. Dr. Thorpe also completed the off-site service request and report for extraction of teeth numbers 17 and 18, and Williams consented to surgery.

Williams was scheduled to see Dr. Kelley at Dodge on January 3, 2014. On December 10 and 15, however, Williams submitted DSRs asking to go to the emergency room due to tooth pain. Dr. Thorpe responded to both DSRs that he was scheduled for extraction as soon as possible, writing that inmates cannot be advised on the off-site visit date for security reasons. Dr. Thorpe knew that Williams' tooth needed to be extracted, but also that there was nothing more he could do for Williams than was already done. Dr. Thorpe concluded that an emergency room visit was not warranted because emergency rooms do not extract teeth, and Williams' pain complaints were being addressed

appropriately with ibuprofen and antibiotics.  (Williams insists that Dr. Thorpe could have extracted the tooth himself but chose not to do so.)

On December 29, 2013, Williams submitted another DSR asking to be sent to the hospital due to tooth pain.  A dental assistant responded on January 2 that the extraction appointment was soon, but again did not provide the date due to security reasons.  Also on December 29, Williams directed an HSR to HSM K. Anderson personally, who did not review it.  Instead, Nurse T. Anderson responded to it on December 30, writing that Williams should raise his dental concerns with dental staff, knowing that Williams was scheduled for an extraction at Dodge in four days.  Further, T. Anderson represents that she lacked the authority to order Williams' transport to the emergency room or to another institution to have his tooth extracted any earlier than scheduled because his issue was dental-related.

Williams directed additional HSRs to HSM K. Anderson, asking her to send him to the hospital or another institution earlier.  Again, in the ordinary course of triaging HSRs, she did not receive or respond to either; rather, a nurse responded to each HSR.  On January 3, 2014, Dr. Kelley extracted teeth numbers 17 and 18.  Dr. Thorpe lacked the authority to order the extraction to take place earlier, and in Dr. Thorpe's view, Williams' pain and need for the extraction did not supersede the needs of other inmates with the same or similar pain complaints.  Dr. Thorpe further represents that it would be very difficult to get Williams in earlier, given the need to arrange for transportation and the lack of predictability in terms of same-day cancellations.  Finally, Dr. Thorpe explains that in his view Williams should not have been sent to the emergency room for his dental pain

complaint because: (1) emergency rooms do not have a dentist on call to perform extractions; and (2) William's pain did not pose a serious risk to his health or safety.  Dr. Thorpe also notes that it is not uncommon for unincarcerated persons to wait months for a tooth extraction, so long as the patient has access to pain relievers and the risk of infection is being addressed.

OPINION

Summary judgment is appropriate if the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the moving party meets this burden, then the non-moving party must provide evidence "on which the jury could reasonably find for the nonmoving party" to survive summary judgment.  *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 406–407 (7th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Defendants seek summary judgment on the merits of plaintiff's Eighth Amendment claims and because his state-law claims are time-barred.[2]

## I.   Eighth Amendment

The Eighth Amendment gives prisoners the right to receive adequate medical care, *Estelle v. Gamble*, 429 U.S. 97 (1976).  To prevail on a claim of constitutionally inadequate medical care, an inmate must demonstrate two elements: (1) an objectively serious medical

---

[2] Perhaps because the applicable statute of limitations for actions under 42 U.S.C. § 1983 in Wisconsin was six years in 2013, rather than three years, *see* 2017 Act 235, § 26 (Wis. 2018), and some question might be raised as to whether his claim accrued until his surgery in early 2014, defendants chose not to assert statute of limitations defense to Williams' Eighth Amendment claims.  Regardless, the court will not assert that affirmative defense for them.

condition; and (2) a state official who was deliberately (that is, subjectively) indifferent. *Giles v. Godinez*, 914 F.3d 1040, 1049 (7th Cir. 2019); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011).  First, a medical need is "serious" if it:  so obviously requires treatment that even a lay person could recognize the need for medical attention; carries risk of permanent serious impairment if left untreated; results in needless pain and suffering; *or* significantly affects an individual's daily activities.  *Gutierrez v. Peters*, 111 F.3d 1364, 1371-73 (7th Cir. 1997).  Second, "deliberate indifference" is a high standard; it means that the official was aware that the prisoner faced a substantial risk of serious harm but disregarded that risk by consciously failing to take reasonable measures to address it.  *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).  Thus, acts of deliberate indifference requires *more than* negligence, or even gross negligence, but requires something less than *purposeful* acts.  *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

The threshold for deliberate indifference is met where:  (1) "the official knows of and disregards an excessive risk to inmate health or safety"; *or* (2) "the official [is] both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," *and* he or she draws that inference yet deliberately fails to take reasonable steps to avoid it.  *Id*. at 837; *see also Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) ("While evidence of malpractice is not enough for a plaintiff to survive summary judgment on an Eighth Amendment claim, nor is a doctor's claim he did not know any better sufficient to immunize him from liability in every circumstance."); *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) ("the infliction of suffering on prisoners can be found to

violate the Eighth Amendment only if that infliction is either deliberate, or reckless in nature in the criminal sense").

### A.    Dr. Thorne

Dr. Thorne seeks summary judgment because he exercised medical judgment in assessing Williams' tooth condition, providing antibiotics and pain medication, noting that Williams was already receiving pain medication from his carpal tunnel surgery, and in ultimately referring Williams for tooth extractions.  Williams maintains in opposition that Dr. Thorne should have taken additional steps to ensure that he received better pain medication and a quicker extraction.

As an initial matter, Dr. Thorne's decisions related to controlling Williams' pain are entitled to considerable deference.  The Seventh Circuit has explained that "treating pain allows considerable room for professional judgment." *Norwood v. Gosh*, 723 F. App'x 357, 365 (7th Cir. 2018); *see also Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (stating that "[u]sing [pain killers] entails risk that doctors must consider in light of the benefits"). To the extent Williams disagreed with Dr. Thorne's treatment decision not to prescribe him anything other than amoxicillin for his tooth infection, he was not entitled to the specific medical treatment of his choice.  *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Nor is a "mere disagreement with a doctor's medical judgment," even amounting to medical malpractice, "enough to prove deliberate indifference in violation of the Eighth Amendment." *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).  As for his pain, Williams had access to multiple pain relievers in August when Dr. Thorne first examined him, and in December, Dr. Thorne observed that Williams had ibuprofen and compresses,

10

as well as prescribed him more amoxicillin to treat his underlying tooth infection until surgery could be scheduled. While perhaps conservative, no evidence suggests that this treatment was outside the bounds of a medically acceptable approach, much less that Dr. Thorne knew that this approach to managing Williams' tooth infection or pain was improper or ineffective.

As for the timing of the tooth extractions themselves, an "[i]nexplicable delay" that exacerbates a prisoner's medical condition or unnecessarily prolongs suffering can show deliberate indifference." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citing *Williams v. Liefer*, 491 F.3d 710, 715-16 (7th Cir. 2007)). "[E]ven brief, unexplained delays in treatment may constitute deliberate indifference," *Lewis v. McLean*, 864 F.3d 556, 563 (7th Cir. 2017) (citation omitted), and "the length of delay that is tolerable depends on the seriousness of the conditions and the ease of providing treatment," *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Additionally, in circumstances in which medical care is delayed, the Seventh Circuit has "required that the plaintiff present 'verifying medical evidence' that the delay, and not the underlying condition, caused some harm." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (quoting *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)).

The most powerful fact for Williams is that he had to wait almost five months for the tooth extraction from the time Dr. Thorne recognized the need to extract. However, the record does not show *who* was responsible for the delay, or whether the delay was avoidable given the number of other inmates with comparable or more serious needs. In fairness, the record may suggest that Dr. Thorne's failure to fill out the off-site service

11

request form until December contributed to that delay, since it is undisputed that on August 15, Dr. Thorne determined that the two teeth should be extracted, when he recorded as much in the Williams' treatment notes.  (Ex. 1000 (dkt. #28-1) 140.)  The record does not show whether Dr. Thorne's assistant took over the process at that point, or whether the assistant would typically take over the process *after* Dr. Thorne filled out the off-site service form, which he admittedly did not complete until December, when he saw Williams for the second time, after Williams continued to report severe pain. Construing the record in Williams' favor, therefore, it may be reasonable to infer that no one actually contacted Dodge until November, when Dr. Thorne ultimately completed the off-site request.

However, no evidence indicates Dr. Thorne intentionally or recklessly dropped the ball; rather, he attests that it would have been his dental assistant who handled scheduling. Even if it was Dr. Thorne's responsibility to fill out the off-site request, no evidence suggests that the omission was purposeful or knowing.  At worst, Dr. Thorne's omission was negligent, and "negligence, gross negligence, or even recklessness as the term is used in tort cases is not enough—the prison officials' state of mind must rise to the level of deliberate indifference."  *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020); *see also Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he courts have labored mightily to prevent the transformation of the Eighth Amendment's cruel and unusual punishments clause into a medical malpractice statute for prisoners.").  Moreover, Dr. Thorne did not leave Williams without *any* interventions in August; he prescribed him amoxicillin to address the potential for infection and observed that Williams had access to multiple strong

pain relievers.  After the August appointment with Williams, the next time Dr. Thorne reviewed Williams' complaints, he examined Williams, observed that he had multiple interventions to address his pain and prescribed him more amoxicillin.  Thus, there is no evidence suggesting that Dr. Thorne was aware that Williams was being left in pain or untreated.

Finally, once the order to Dodge went through, there is no dispute that Dr. Thorne could not control the timing of Dr. Kelley's extraction, and no evidence suggests that Dr. Thorne had reason to believe that Williams' condition was sufficiently urgent, even in November, that he should have taken steps to try to hasten the removal.  And it is undisputed that sending Williams to the emergency room was not an option.  Dr. Thorne attests that he believed that between the pain medication and antibiotics, Williams was receiving adequate treatment while he waited the approximate month between when he submitted the off-site service request and when the extraction took place.  Dr. Thorne does not deny that Williams was in pain, but the Eighth Amendment does not guarantee pain-free medical treatment.  *Gosh*, 723 F. App'x at 365 ("Medical professionals cannot guarantee pain-free lives for their patients.").  In short, Dr. Thorne did not exhibit deliberate indifference in his handling of the needed extraction, and he is entitled to summary judgment on the merits of Williams' Eighth Amendment claim.

### B.    HSM K Anderson

As the HSU Manager, K. Anderson is also entitled to summary judgment because she did not consciously disregard Williams' condition.  First, the undisputed evidence

13

shows that K. Anderson never treated Williams for his tooth pain, nor did she ever actually review one of the HSRs that Williams directed to her.  Second, K. Anderson's position as the HSM alone is not proof that she was personally aware of every HSU request or inmate complaint.  *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) (rejecting concept of supervisory strict liability under § 1983).  Indeed, it is undisputed that HSU *staff* triage HSRs based on the nature of the treatment requested; they are not sent to the HSM nor automatically forwarded to the person an inmate lists on the HSR.  Accordingly, K. Anderson is entitled to summary judgment because she was not personally involved in handling Williams' requests for dental care or pain relief.  *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (citing *Wilson v. Warren Cnty.*, 830 F.3d 464, 469 (7th Cir. 2016)).

### C.    Nurse T. Anderson

The result is the same for T. Anderson.  This defendant responded to just one HSR, written on December 30, 2013, advising Williams that he should refer to the treatment plan set by the dental care team (meaning that he would have to wait to have his tooth extraction, which she knew was just a few days away).  As a nurse, T. Anderson was entitled to defer to Dr. Thorne's judgment and the scheduling by Dodge personnel, so long as she had no basis to believe they were ignoring plaintiff's condition.  *See Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1075-76 (7th Cir. 2012) (nurse is entitled to rely on a doctor's advice unless it will obviously harm the patient); *Rasho v. Elyea*, 856 F.3d 469, 478-79 (7th Cir. 2017) (prison officials, even medical professionals in a non-treating role, are "entitled

to rely on the judgment of medical professionals treating an inmate").  Williams has not submitted evidence that he raised a new, urgent issue in the only HSR reviewed by T. Anderson, from which she should have inferred that the treatment plan in place was no longer appropriate.  Nor is there evidence that Williams raised any emergency with his unit staff or reported in that HSR that his condition had worsened, such that he needed to be examined that day.  Therefore, T. Anderson's response to that HSR does not support a reasonable finding that she consciously disregarded his need for medical attention that day, and she, too, is entitled to summary judgment on this claim.[3]

## II.     Wisconsin negligence claims

Defendants seek summary judgment as to Williams' Wisconsin negligence claims on the ground that they are time-barred.  In 2013, Wisconsin law stated that actions "to recover damages for injury arising from any treatment or operation performed by, or from an omission by, a person who is a health care provider, regardless of the theory on which the action is based, shall be commenced within the later of: . . . Three years from the date of the injury[.]"  Wis. Stat. § 893.55(1m)(a).  In 2013, the statute of limitations for negligence claims involving injury to a person was also three years.  Wis. Stat. § 893.54(1)(a).  Finally, in 2013, the statute of limitations for negligence claims involving injury to a person also was three years.  Wis. Stat. § 893.54(1m)(a).

---

[3]  Candidly, to the extent that Williams might feel the result here seems to be one of "passing the buck," where no one is directly responsible for the long delay in his tooth extractions or his suffering in the meantime, he would not be entirely wrong.  However, having failed to offer any proof that the treatment (including the months delay) is outside the bounds of mere negligence or even gross negligence, no federal constitutional claim exists.

Applying these statutes here, all of Williams' state-law claims were untimely when he filed this lawsuit in January of 2020.  Nor does Williams dispute that he failed to bring his negligence claims within three years of the 2013 tooth extractions.  Therefore, defendants are entitled to summary judgment as to Williams's negligence claims as well.

ORDER

IT IS ORDERED that:

1.  Defendants' motion for summary judgment (dkt. #31) is GRANTED.

2.  The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered this 13th day of December, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

16